UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HAROLD L. ROSBOTTOM, JR. | CIVIL ACTION NO. 08-cv-0522 |
| VERSUS | JUDGE STAGG |
| GTECH CORP., ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Harold L. Rosbottom, Jr. ("Plaintiff") is a party to separate contracts with GTECH Corporation ("GTECH") and Spielo Manufacturing, ULC ("Spielo") related to the sales and distribution of video gaming equipment in Louisiana. Plaintiff sued GTECH and Spielo in state court for breach of contract and related claims. Defendants removed based on diversity jurisdiction, and they have presented a Motion to Compel Arbitration (Doc. 10) based on provisions in their contracts. For the reasons that follow, it is recommended that the motion be granted.

**Relevant Facts**

Defendants have submitted copies of the relevant contracts and a copy of their demand for arbitration. No other evidence has been submitted by any party. Thus, most of the relevant facts come from the allegations in Plaintiff's state court petition and the provisions of the two contracts.

Plaintiff is a distributor of video gaming devices in Louisiana. Spielo, a wholly-owned subsidiary of GTECH, manufactures video poker gaming devices. Plaintiff entered into a Video Gaming Device Distribution Agreement ("VGD Distribution Agreement") with Spielo. The contract granted Plaintiff the exclusive right to distribute Spielo's machines in Louisiana. Plaintiff, in return, was required to purchase such machines exclusively from Spielo. Petition, ¶¶ 5-8.

About two years later, the Louisiana State Police awarded GTECH the exclusive right to provide an updated video site controller system, by which the Louisiana authorities remotely monitor and control video gaming devices. Plaintiff entered into a Video Site Controller Distribution Agreement (the "VSC Distribution Agreement") with GTECH, under which Plaintiff was granted the exclusive right to sell and distribute GTECH's controllers in Louisiana. Plaintiff purchased, on credit, more than $1,000,000 worth of the devices. ¶¶ 11-12.

Plaintiff later learned that Spielo was no longer permitted by the Louisiana State Police to ship parts or new devices into Louisiana until Spielo revised and resubmitted its application to be a licensed device manufacturer. Representatives of Spielo and GTECH told Plaintiff that they intended to comply with the regulatory requirements, so Plaintiff continued operations based on those representations. Several months later, a GTECH officer told Plaintiff that GTECH had decided not to resubmit Spielo's license application, effectively withdrawing Spielo products from Louisiana. ¶¶ 15-20. Plaintiff alleges that GTECH

knowingly concealed its intent to terminate Spielo's licensing effort in order to induce Plaintiff to help GTECH implement the new controller systems and to prevent Plaintiff from terminating the VGD Distribution Agreement and entering into a contract with a Spielo competitor. ¶¶ 20-23.

During the course of these events, Louisiana approved amendments that allowed an increase in maximum payout for video poker devices from $500 to $1,000. To remain competitive, each existing $500 machine requires a technical upgrade to permit a $1,000 payout. The Spielo devices that Plaintiff sold his customers, and those still in Plaintiff's inventory, are programmed for $500. Spielo's unlicensed status in Louisiana prevents Spielo from legally supplying Plaintiff the hardware and software needed to upgrade the machines. This has rendered the Spielo machines prematurely obsolete and caused serious damage to Plaintiff's customer relationships. Plaintiff alleges that these actions violate Spielo's warranty in the VGD Distribution Agreement to receive all appropriate governmental licenses and approvals for its products. ¶¶ 24-29.

Plaintiff's petition, after alleging the general facts above under the heading, "Facts Common to All Claims," sets forth four claims or counts under individual headings. Only one of the counts is aimed at Spielo. It is titled "Spielo's Tortious Breach of Contract" and alleges that Spielo's breaches of its contractual and implied duties under the VGD Distribution Agreement constitute a tort and intentional breach of contract. ¶¶ 43-48.

Three counts of Plaintiff 's petition are directed at GTECH. The first is labeled "GTECH's Tortious Interference with Contract and Business Relations." Plaintiff alleges that GTECH, as the sole shareholder of Spielo, dominated the affairs of Spielo, including actions related to Spielo's VGD Distribution Agreement with Plaintiff. Plaintiff alleges that GTECH, therefore, owed a duty to Plaintiff to refrain from acts that intentionally caused Spielo to breach its contract or made Spielo's performance more burdensome or impossible. GTECH allegedly breached that duty through its decision to cause Spielo to withdraw its application for licensing in Louisiana. ¶¶ 30-36.

Plaintiff makes a similar claim under the heading "GTECH's Tortious Misrepresentation." Plaintiff there alleges that GTECH assured Plaintiff that it would, in exercise of its control of Spielo, continue to prosecute the licensing effort in Louisiana when, at the same time, GTECH had decided to terminate the licensing effort. GTECH allegedly knew or should have known that its misrepresentations would induce Plaintiff to refrain from terminating the VGD Distribution Agreement or enter agreements with Spielo's competitors, and it would induce Plaintiff to purchase additional Spielo products in the meantime. ¶¶ 37-42.

The final count is titled "GTECH's Tortious Breach of Contract." Plaintiff alleges there that GTECH's actions in causing Spielo to delay and later withdraw its application in Louisiana constitute a breach of the VSC Distribution Agreement that Plaintiff had with

GTECH. Plaintiff does not cite any particular contractual provisions, but he alleges that GTECH breached implied covenants of good faith and fair dealing. ¶¶ 49-53.

Each of the contracts at issue contain the following arbitration clause:

> In the event of *any dispute between the parties under this Agreement*, the matter shall be settled by binding arbitration in the City of Wilmington, Delaware or such other location agreed to by the parties in accordance with the United States Federal Arbitration Act and the rules of the American Arbitration Association. (Emphasis added.)

**Analysis**

**A. Scope of the Clauses**

When a court is faced with a motion to stay litigation or compel arbitration because of an arbitration clause, the court must first determine whether the parties agreed to arbitrate the dispute. This involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Brown v. Pacific Life Ins. Co., 462 F.3d 384, 396 (5th Cir. 2006).

Plaintiff does not contest that there are valid agreements to arbitrate found in the contracts between him and the two defendants. And Plaintiff concedes that his claim against Spielo for breach of the VGD Agreement and claim against GTECH for breach of the VSC Agreement "may be subject to arbitration" as within the scope of the arbitration clauses. He offers no argument to the contrary with respect to those claims, and the court finds that the arbitration clauses at issue easily include those breach of contract claims within their scopes.

The only real dispute in the parties' memoranda is whether Plaintiff's claim against GTECH for intentional interference with a contract is within the scope of an arbitration clause. The parties did not specifically address the tortious misrepresentation claim directed at GTECH, so it appears they have lumped together the two tort claims.

In determining whether the tort claims are within the scope of the arbitration clause, the court is "not to determine the merits of the dispute." Pennzoil Exploration v. Ramco Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). The court must "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration," and arbitration "should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Id. (internal quotation marks omitted).

Courts have added to that seemingly simple standard the step of determining whether the arbitration clause at issue is broad or narrow. Broad arbitration clauses, such as those that apply to "any claim or controversy arising out of or in relation to or in connection with" a contract, are not limited to claims that literally arise under the contract but embrace all disputes between the parties that have a significant relationship to the contract, regardless of the label attached to the dispute. Pennzoil, 139 F.3d at 1067; 1 Domke on Commercial Arbitration, § 15:6. Courts distinguish narrow arbitration clauses that only require arbitration of disputes "arising out of" the contract from broader clauses that govern disputes that "relate to" or "are connected with" the contract. Id.

The arbitration clause at issue applies in the event of "any dispute between the parties under this Agreement." Neither party has cited controlling precedent that has interpreted a clause that used that exact language, but the clause tends to resemble those clauses that have been held narrow. The reasonable interpretation of the clause is that it applies to any dispute (between the parties) that arises under the agreement. GTECH emphasizes the language "any dispute between the parties" in an attempt to broaden the clause, but that would ignore the "under this Agreement" language and make it superfluous. It could not be intended to modify only "the parties" because there are no other parties than those under the agreement. And GTECH's interpretation would mean the arbitration clause would apply to "any dispute" that GTECH and Plaintiff might ever have in any setting or context, which is not a reasonable interpretation of the agreement and could not have been the mutual intent of the parties.

Once an arbitration clause is deemed narrow, a collateral matter that does not arise under the contract will generally be ruled beyond the scope of the arbitration clause. Domke, supra; 1 Commercial Arbitration, § 6:7. Plaintiff argues that his intentional interference with contract claim is independent of his agreement with GTECH. Plaintiff need not point to any provision of the GTECH contract to support the intentional interference claim, and the claim could just as easily exist if Plaintiff and GTECH had no contractual relationship at all. The same is true of the misrepresentation claim.

GTECH replies that the court should compel arbitration even if the clause at issue is narrow because the tortious interference claim is so interwoven with the claims that are

subject to arbitration. GTECH bases its argument on authorities such as Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243 (5th Cir. 1998). The Ford case addressed an arbitration clause that applied to "any controversy or claim arising out of or relating to" the agreement or the breach thereof. The Fifth Circuit determined that other provisions in the contract required that Texas law govern the scope of the arbitration clause. The Texas law discussion by the Court does not examine whether the clause would be narrow or broad, although it would appear to fall within the broad category used in federal law. The Court said the test for whether a tort claim is sufficiently related to the agreement to be arbitrable, which test is similar under Texas or federal law, focuses on the factual allegations in the complaint instead of the legal labels attached to the causes of action. Ford, 141 F.3d at 250. It noted that a breach of a duty owed under a contract may give rise to claims for both breach of contract and tort at the same time. Basing arbitrability merely on the legal labels would allow "artful pleading" to dodge arbitration of a dispute otherwise "arising out of or relating to" the underlying contract. Id. To avoid this dodge, courts look at the facts giving rise to the action to determine whether the action could be maintained without reference to the contract. Id. at 250-51.[1]

---

[1] Ford involved a broad clause, but another court applying Texas law has held that the same scope analysis would also apply to a narrow arbitration clause. Coffman v. Provost * Umphrey Law Firm, LLP, 161 F.Supp. 2d 720, 730 (E.D. Tex. 2001). One must be careful, however, that broad application of such a standard would effectively convert all arbitration clauses to broad ones and encompass all claims that relate to the contract rather than only the ones that arise under it, as agreed by the parties.

The court has looked at the facts in the state court petition that are directed at GTECH. Plaintiff does not allege that GTECH violated any specific clause or provision of the VSC Distribution Agreement between GTECH and Plaintiff. Rather, the facts focus upon GTECH's alleged misrepresentations to Plaintiff about its efforts with regard to Spielo's licensing, and GTECH's alleged wrongful influence upon Spielo that caused Spielo to breach its contract with Plaintiff. It makes sense that Plaintiff's first counts against GTECH are for tortious interference with contract and misrepresentation. It is only after Plaintiff also sets forth its breach of contract claim against Spielo that he adds a final count of breach of contract against GTECH. The count does not cite any provision of the contract that GTECH has alleged to have breached. Rather, Plaintiff alleges that GTECH's actions in causing Spielo to withdraw its licensing application and misrepresenting its intent in that regard "constitute a breach of the VSC Distribution Agreement" and breach the implied covenants of good faith and fair dealing. Petition, ¶¶ 49-50.

A review of the facts indicates that Plaintiff did not make what were actually breach of contract claims and artfully plead them as torts. Rather, it appears that Plaintiff alleged torts that do not arise under or require any resort to its contract with GTECH. If there was any sign of artful pleading, it is in the allegation of a breach of contract based on collaterally related tort actions. The undersigned finds that the application of the guiding precedents to these rather unusual facts should result in a determination that Plaintiff's tort claims against GTECH are not within the scope of the arbitration clause.

**B. Equitable Estoppel**

Defendants did not invoke equitable estoppel in their motion to compel, but Plaintiff argued in his opposition that the theory, as set forth in Grigson v. Creative Artists Agency, LLC, 210 F.3d 524 (5th Cir. 2000), should not apply. Defendants, who had not mentioned the doctrine before, suddenly embraced it in their reply memorandum.

The application of the doctrine to force persons who have not signed an arbitration agreement to nonetheless arbitrate is not without controversy. The Fifth Circuit looked to other circuits that have held that equitable estoppel may allow a non-signatory (such as GTECH is with respect to the Spielo contract) to compel arbitration in two circumstances. The first is when the signatory (Plaintiff) must rely on the terms of the written agreement in asserting its claims against the non-signatory (GTECH). GTECH does not argue that this version of the doctrine is applicable. The second situation in which equitable estoppel is said to be warranted is when the signatory (Plaintiff) to the contract that contains the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory (GTECH) and one or more signatories (Spielo) to the contract. GTECH argues that this prong is applicable.

Grigson held that the district judge did not abuse his discretion when he held the doctrine applicable. Both grounds for application of the doctrine were present in Grigson, but there is no holding that one ground alone is not adequate. Only one ground is arguably present in this case. Its legal foundation is admittedly less than rock solid. Grigson is a 2-1

decision with a spirited dissent, and other courts have rejected the concerted misconduct bases. See, e.g. In Re: Merrill Lynch Trust Co. FSB, 235 S.W. 3rd 185, 191-95 (Tex. 2007). Grigson is, however, precedential so that the doctrine remains available in this circuit.

Plaintiff alleges that GTECH "dominated and completely controlled the affairs of its subsidiary, Spielo." Petition, ¶ 14. Plaintiff also alleges that all representatives of Spielo who were involved in the negotiation and performance of the VGD Distribution Agreement were employees or officers of GTECH. Id. Plaintiff alleges that it was a GTECH officer who contacted him and informed him that GTECH had decided not to resubmit Spielo's license application. ¶ 20. Plaintiff alleges that it was through GTECH's manipulation of Spielo that Spielo breached the VGD Distribution Agreement in which the relevant arbitration clause is found. The Plaintiff also alleges "GTECH conspired with the officers, directors and employees of Spielo to assist and encourage their decision to breach Spielo's contract with Plaintiff." ¶¶ 30-33.

This is not a case in which requiring Plaintiff to arbitrate its claims against GTECH pursuant to the Spielo arbitration clause is forcing GTECH into arbitration based on mere corporate connection.[2] And requiring Plaintiff to arbitrate under these circumstances would not be based on an unwarranted judicial expansion of the narrow Spielo clause. Requiring Plaintiff to arbitrate the claims against GTECH in this case is appropriate under the judicial

---

[2] A parent-subsidiary relationship, alone, is not adequate to impose arbitration on a non-signatory corporation. Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 688 (7th Cir. 2005).

estoppel doctrine adopted in Grigson because Plaintiff bases those claims on the contention that GTECH was, in all relevant respects, 100% controlling every step that Spielo took when Spielo allegedly breached the contract that contains the arbitration clause. Under these circumstances, especially considering the inefficiencies that would result if the tort claims against GTECH remained in this court (albeit subject to a stay pending arbitration) while the virtually identical breach of contract claims against GTECH proceeded through the arbitration process, the undersigned finds that the best exercise of the court's discretion[3] afforded by the equitable estoppel doctrine recognized in Grigson is to hold that Plaintiff's tort claims against GTECH are required to be arbitrated.

**Conclusion**

If a suit is brought upon any issue referable to arbitration under a written agreement to arbitrate, the court shall, on application of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ... ." 9 U.S.C. § 3. Also, if a party aggrieved by the alleged refusal of another to arbitrate under a written agreement for arbitration petitions the court, the court, if satisfied that arbitration is required, "shall make an order directing the parties to proceed to arbitration in accordance with the

---

[3] The Fifth Circuit has made clear that application of the equitable estoppel doctrine is within the district court's sound discretion and that the doctrine "is not a rigid test, and that each case turns on its facts." Hill v. G E Power Systems, Inc., 282 F.3d 343, 348 (5th Cir. 2002).

terms of the agreement." 9 U.S.C. § 4. Defendants move for a stay and an order compelling such arbitration. Those forms of relief are appropriate.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Compel Arbitration (Doc. 10) be **granted** as follows: Harold L. Rosbottom, Jr., GTECH Corporation, and Spielo Manufacturing, ULC should be ordered to submit to and/or commence arbitration proceedings in accordance with the arbitration provisions of the First Amended and Restated Video Gaming Device Distribution Agreement and the Video Site Controller Distribution Agreement attached to the motion. It is further recommended that this litigation be stayed pursuant to the Federal Arbitration Act and, due to the unlikely event that any further activity will occur in this civil action in the reasonably foreseeable future, it is recommended that the Clerk of Court be directed to close this civil action for administrative purposes.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of September, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE